**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No.:

Dennis Mark Mickeleit and
Beta Gama Foundation,

    Plaintiffs,

v.

Vallarino Fry Law, P.A. d/b/a Bufete
Vallarino y Asociados and Nicholas M.
Apostol,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, Dennis Mark Mickeleit ("Mickeleit") and Beta Gama Foundation ("BGF," with Mickeleit, "Plaintiffs"), sue Defendants, Vallarino Fry Law, P.A. d/b/a Bufete Vallarino y Asociados ("VFL") and Nicholas M. Apostol ("Apostol," with VFL, "Defendants"), and allege:

## JURISDICTION AND VENUE

1. This action involves, among other things, breach of contract, breach of fiduciary duty, fraud, conversion, unjust enrichment, and violation of Florida's Deceptive and Unfair Trade Practices Act relating to Defendants' tortious and illegal actions in obtaining Plaintiffs' monies resulting in losses to Plaintiffs in excess of $4,000,000.00.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) based on diversity of citizenship.

3. This is an action for money damages in excess of $75,000.00, exclusive of costs, interest, and attorneys' fees.

1

4879-8450-1038.2

4. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. §1391(b).[1]

## THE PARTIES

5. Plaintiff Mickeleit, an individual, is a citizen of Germany for purposes of §1332(c) and is otherwise *sui juris*.

6. Plaintiff BGF, a Panamanian private foundation, is deemed a citizen of Panama for purposes of §1332(c). Mickeleit is the president of BGF.

7. Defendant VFL, a Florida for profit corporation, is deemed a citizen of Florida for purposes of §1332(c). VFL is a Florida law firm.

8. Defendant Apostol, an individual, is a citizen of Florida for purposes of §1332(c) and is otherwise *sui juris*. Apostol is the registered agent, treasurer, secretary, and a director of VFL.

## GENERAL ALLEGATIONS

9. In early 2019, Mickeleit was initially introduced to VFL and Elio Medina ("Medina"), an agent or employee of VFL, through a common acquaintance who had previously invested with VFL.

10. Mickeleit's first meeting occurred in February 2019 in Panama with Medina and Andrés Jaen ("Jaén"). At that time, Jaén was a director for VFL. While both Medina and Jaén were present, Jaén led that initial meeting and provided Mickeleit with a presentation regarding the potential investment opportunities with VFL.

11. The presentation included the discussion of primarily two investment opportunities, (1) purchasing medical supplies in the Republic of Panama and then re-selling them to the

---

[1] The parties also entered into various Escrow Agreements in which the parties agreed that the "state and federal courts in Miami Dade County, Florida shall have the exclusive jurisdiction to resolve any dispute, difference, controversy or claim arising out of or relating to this Agreement."

Panamanian government at a markup; and (2) purchasing concessions to be re-sold at various airports in the Republic of Panama at a markup. Essentially, Defendants sold Plaintiffs on an arbitrage opportunity. Jaén explained that he, Apostol, and VFL had been successfully doing these types of investments for years given their close relationship with members of the Panamanian government, and Jaén promised Mickeleit returns of 30%-40% on his invested funds. Jaén also provided Mickeleit with charts showing how the investments would work and the returns he would receive if he were to invest.

12.     Ultimately, Defendants persuaded Plaintiffs to enter into the following Escrow Agreements[2] with VFL and Apostol:

Escrow Agreement dated April 23, 2019 ($125,000.00)
Escrow Agreement dated May 14, 2019 ($135,000.00)
Escrow Agreement dated May 14, 2019 ($60,000.00)
Escrow Agreement dated July 10, 2019 ($100,000.00)
Escrow Agreement dated October 4, 2019 ($328,138.00)
Escrow Agreement dated December 23, 2019 ($421,500.00)
Escrow Agreement dated January 23, 2020 ($70,000.00)
Escrow Agreement dated February 26, 2020 ($677,000.00)
Escrow Agreement dated March 24, 2020 ($52,340.00)
Escrow Agreement dated May 19, 2020 ($683,000.00)
Escrow Agreement dated July 16, 2020 ($1,000,000.00)
Escrow Agreement dated October 14, 2020 ($956,000.00)
Escrow Agreement dated November 18, 2020 ($1,200,000.00)
Escrow Agreement dated March 5, 2021 ($956,000.00)
Escrow Agreement dated April 9, 2021 ($1,422,000.00)

13.     Mickeleit initially invested in his own name, but beginning with the December 23, 2019 Escrow Agreement, at the recommendation of VFL, all of the investments were made through BGF.

---

[2] True and correct copies of the Escrow Agreements are attached hereto as **Composite Exhibit A**.

14. Except for the amounts invested, each of the Escrow Agreements is substantially similar. Generally, upon entry into an Escrow Agreement, Plaintiffs would deliver the Escrow Funds to the non-interest bearing Escrow Account (as defined in the Escrow Agreement), to which Apostol had total control and was the sole signatory. The Escrow Account was maintained at either Chase Bank, N.A. or Wells Fargo. The Escrow Funds would be held in the Escrow Account for a period of no more than 120 days (the "Funding Period"). While the Escrow Funds were in the Escrow Account, the Transaction (as defined in the Escrow Agreements) would occur. And, finally, at the end of the Funding Period, Defendants were to release to Plaintiffs the Escrow Funds, plus the agreed upon Returns (typically 30% - 40%), within five days of a written request for the return.

15. However, instead of returning the Escrow Funds and Returns to Plaintiffs at the end of the Funding Periods, Defendants would convince Plaintiffs to "rollover" their Escrow Funds and Returns into a new investment and agreement to achieve an even larger return. As a result, Defendants have never paid any monies to Plaintiffs under the Escrow Agreements.

16. As additional protection for Plaintiffs, the Escrow Agreements afforded Plaintiffs the right to receive status reports of the underlying transactions every 15 days and written proof of funds letters on a bi-weekly basis demonstrating that the funds are still being maintained in the Escrow Account. Defendants failed to comply with these requirements.

17. Each time Plaintiffs entered into a new Escrow Agreement, Defendants would assure Plaintiffs that their funds were being held in an escrow account that only Apostol had control over and was the only signatory. In actuality, that representation was false, and Defendants knew that representation to be false at the time it was made. Defendants have failed to provide Plaintiffs with written evidence demonstrating that the Escrow Funds are maintained in the Escrow Account.

The simple reason being that Defendants misappropriated such funds and the funds are no longer maintained in the Escrow Account.

18. In or around January or February of 2022, Plaintiffs began making demands for the return of the Escrow Funds and Returns. In response, Defendants continually made excuses as to why the monies were not being delivered. Defendants attempted to blame the delays for payment on Chase and Wells Fargo where the Escrow Accounts were maintained, but Defendants never articulated the exact issue or what needed to occur in order for the "issue" to be resolved. In reality, Defendants were merely attempting to buy time to try and figure out a way to pay Plaintiffs the monies owed under the Escrow Agreements that Defendants misappropriated.

19. Plaintiffs provided Defendants with numerous opportunities to deliver the Escrow Funds and Returns as required pursuant to the Escrow Agreements. In fact, although not required to do so, Plaintiffs extended the deadline for Defendants to make good on the payments. Despite the repeated extensions and promises by Defendants to deliver the funds, no funds were ever delivered.

20. There is no dispute regarding whether Plaintiffs are owed monies under the Escrow Agreements or as to the amount of Escrow Funds and Returns owed to Plaintiffs under the Escrow Agreements. Indeed, on or about July 13, 2022, VFL provided Plaintiffs with an accounting (the "Accounting") acknowledging that Defendants owed Plaintiffs $4,003,860.00 as of that date.[3]

21. At the time VFL provided the Accounting, VFL advised that full payment was forthcoming and, as a show of good faith, Defendants would immediately release $150,000.00 to Plaintiffs.

---

[3] A true and correct copy of the Accounting is attached hereto as **Exhibit B**.

22. Again, Defendants failed to make good on their promise, and Defendants never released $150,000.00 or any other funds to Plaintiffs.

23. On July 20, 2022, as a result of Plaintiffs' continued failures to make good on their promises to deliver the Escrow Funds and Returns to Plaintiffs, Plaintiffs' counsel sent Defendants a letter (the "Demand Letter")[4] formally demanding the delivery of the Escrow Funds and the Returns totaling $4,003,860.00 and written confirmation that the funds were still being maintained in the Escrow Account.

24. Pursuant to the Escrow Agreements, Defendants had five days to deliver the Escrow Funds and the Returns to Plaintiffs.

25. Defendants failed to provide any written response to the Demand Letter or comply with the Demand Letter by delivering the $4,003,860.00.

26. Defendants' actions and inaction have resulted in the filing of this lawsuit.

27. Plaintiffs have retained the law firm of Lewis Brisbois Bisgaard & Smith LLP to provide legal services to represent their interests in this action and have agreed to pay the firm a reasonable fee for services rendered.

28. All conditions precedent to this action have been performed, occurred, satisfied, waived, or excused, or the performance of conditions precedent would be futile.

## COUNT I – BREACH OF CONTRACT
### (as to VFL and Apostol)

29. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

30. This is a cause of action against VFL and Apostol for breach of contract.

---

[4] A true and correct copy of the Demand Letter is attached hereto as **Exhibit C**.

31. Plaintiffs and VFL and Apostol are parties to written contracts, the Escrow Agreements.

32. Plaintiffs have performed all obligations under the Escrow Agreements.

33. The Funding Periods under each of the Escrow Agreements, including any extensions, have long expired.

34. VFL and Apostol have breached the Escrow Agreements by, *inter alia*, failing to deliver the Escrow Funds and Returns to Plaintiffs as required by the Escrow Agreements, failing to provide written proof of funds letters as requested, and failing to provide status reports of the underlying transactions.

35. Plaintiffs have suffered, and continue to suffer, damages as a result of VFL's and Apostol's breaches of the Escrow Agreements.

## COUNT II – BREACH OF FIDUCIARY DUTY
### (as to VFL and Apostol)

36. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

37. This is a cause of action against VFL and Apostol for breach of fiduciary duty.

38. VFL was the Escrow Agent under the Escrow Agreement and Apostol is its duly authorized representative and was the sole signatory on the Escrow Account.

39. Defendants knew or had reason to know Plaintiffs placed their trust and confidence in them and relied on their representations and obligations to ensure proper protocol, procedures, and due care were followed in all transactions and actions under or relating to the Escrow Agreement.

40. Defendants established a fiduciary duty with Plaintiffs, whether express or implied in law, based upon the special relationship and the specific factual circumstances described herein.

7

Indeed, the Escrow Agreements specifically acknowledge that "[a] fiduciary relationship-shall exist between ESCROW AGENT and the Investor and ESCROW AGENT acknowledges its fiduciary obligations to the Investor."[5]

41. Plaintiffs were justified in placing their trust and confidence in Defendants.

42. Defendants owed duties to Plaintiffs of loyalty, prudent administration and control of the escrowed property, refraining from gross negligence or reckless conduct, self-dealing, and willful or intentional misconduct.

43. Defendants were further required to discharge their duties consistently with the obligations of good faith and fair dealing.

44. Defendants breached their fiduciary obligations to Plaintiffs, as described herein, by, *inter alia*, failing to comply with the terms of the Escrow Agreements by delivering the Escrow Funds and Returns to Plaintiffs and/or misappropriating the Escrow Funds and Returns.

45. Defendants' misconduct caused significant damage to Plaintiffs.

46. Defendants' breaches amount to willful and intentional misconduct or, at the very least, gross negligence and reckless misconduct.

47. Plaintiffs have been damaged as a direct and proximate result of Defendants' breaches of fiduciary duty.

### COUNT III – FRAUDULENT INDUCEMENT
**(as to VFL and Apostol)**

48. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

49. This is a cause of action against VFL and Apostol for fraudulent inducement.

---

[5] *See* Escrow Agreement, at ¶6b.

50. As alleged herein, Defendants made false representations to Plaintiffs to induce Plaintiffs to invest and enter into the Escrow Agreements.

51. Defendants promised Plaintiffs returns of 30% - 40%, when Defendants knew that they were incapable of providing such returns to Plaintiffs.

52. Moreover, each time Plaintiffs entered into a new Escrow Agreement, Defendants promised that the Escrow Funds would be held pursuant to the terms of the Escrow Agreements.

53. However, at the time Defendants executed the Escrow Agreements, Defendants had no intention of complying with such terms.

54. In making the knowingly false representations, Defendants intended to, and did, induce Plaintiffs to enter into each Escrow Agreement.

55. Plaintiffs acted in reliance on Defendants' false representations and invested in the Escrow Agreements under the belief that said funds would be utilized consistent with the terms of the Escrow Agreements and that Defendants would take such other actions as they represented that they would and had done, including maintaining the Escrow Funds in the Escrow Account and delivering the Escrow Funds and Returns upon expiration of the Funding Period.

56. Had Plaintiffs known that Defendants never intended to comply with the terms of the Escrow Agreements, were incapable of complying with the terms of the Escrow Agreements at the time they were executed, or intended to misappropriate such funds, Plaintiffs would have never entered into the Escrow Agreements.

57. As a result of Plaintiffs' reliance on Defendants' false representations, Plaintiffs suffered significant damages.

4879-8450-1038.2

## COUNT IV – CONSTRUCTIVE FRAUD
### (as to VFL and Apostol)

58. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

59. This is a cause of action against VFL and Apostol for constructive fraud.

60. Under the Escrow Agreements, VFL and Apostol owed fiduciary duties to Plaintiffs.

61. Plaintiffs placed trust and confidence in VFL and Apostol and trusted that they would comply with the terms of the Escrow Agreements, including properly accounting for the Escrow Funds, holding the Escrow Funds pursuant to the terms of the Escrow Agreements, providing Plaintiffs with all required reports and status updates under the Escrow Agreements, and delivering the Escrow Funds and Returns as required.

62. Plaintiffs, VFL, and Apostol were not dealing at arm's length. Indeed, VFL and Apostol knowingly misrepresented (and continue to misrepresent) the status of Plaintiffs' Escrow Funds and how such funds would be utilized.

63. As a result of Defendants' constructive fraud, Plaintiffs have suffered significant damages.

## COUNT IV – CONVERSION
### (as to VFL and Apostol)

64. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

65. This is a cause of action against VFL and Apostol for conversion.

66. Defendants' improper taking and retention of the Escrow Funds which belong to Plaintiffs gives rise to a claim for conversion. Defendants, without authorization, asserted dominion and control over the Escrow Funds.

67. The Escrow Funds are specifically identifiable property of Plaintiffs and are or were the property of Plaintiffs and which were owned or payable to Plaintiffs.

68. Defendants' conversion is inconsistent with Plaintiffs' rights and ownership of the Escrow Funds.

69. VFL and Apostol solicited and advised Plaintiffs to invest with VFL. Upon trust and advice and based upon Defendants' solicitation and misrepresentations, Plaintiffs invested millions of dollars into VFL for purposes of a transaction for medical supplies in the Republic of Panama or concessions at the airports in the Republic of Panama. In return, Defendants promised not only to return the Escrow Funds to Plaintiffs, but also pay Plaintiffs the Returns.

70. Instead of using the Escrow Funds as solicited, promised, advised, and agreed upon, Defendants converted the Escrow Funds for their own benefit and use.

71. The Escrow Funds were wrongfully and illegitimately used for the benefit of Defendants.

72. Plaintiffs made a demand for the return of the Escrow Funds, but the funds have not been returned.

73. As a result of Defendants' conversion of the Escrow Funds, Plaintiffs have been damaged.

**COUNT IV – UNJUST ENRICHMENT**
**(as to VFL and Apostol)**

74. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

75. This is a cause of action against VFL and Apostol for unjust enrichment.

76. By delivering the Escrow Funds to Defendants, Plaintiffs conferred a benefit on Defendants, each of whom has knowledge of the benefit conferred.

77. Defendants voluntarily accepted and retained the benefits conferred by Plaintiffs.

78. Because Plaintiffs provided substantial benefits to Defendants and Defendants provided no corresponding benefit to Plaintiffs because, *inter alia*, Defendants did not return the Escrow Funds or the Returns and retained such funds for their own benefit, the circumstances render the Defendants' retention of the benefits conferred inequitable unless Defendants return the monies to Plaintiffs.

## COUNT IV – FDUPTA
### (as to VFL and Apostol)

79. Plaintiffs incorporate and reallege Paragraphs 1 through 28 as if fully restated herein.

80. This is a cause of action against VFL and Apostol for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

81. Plaintiffs are consumers within the meaning of Fla. Stat. §501.203(7).

82. VFL and Apostol engaged in trade or commerce within the meaning of Fla. Stat. §501.203(8) by, *inter alia*, entering into the Escrow Agreements and participating in other business dealings with Plaintiffs.

83. Defendants' conduct in making misrepresentations to Plaintiffs in order to get them to enter into the Escrow Agreements was unfair, deceptive, unconscionable, immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs. By serving as the authorized representative of VFL, signatory to the Escrow Agreements, and sole signatory and control person over the Escrow Account, Apostol was integral to facilitating these unfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

84. As a result of Defendants' unfair and deceptive practices, Plaintiffs, acting reasonably in the circumstances, were mislead into executing the Escrow Agreements and delivering the Escrow Funds to Defendants.

85. Defendants' conduct was likely to deceive a consumer acting reasonably in the circumstances in which Plaintiffs were placed to their detriment.

86. Indeed, Plaintiffs are aware of other investors who were similarly deceived by Defendants under similar circumstances.

87. As a result of Defendants' violations of FDUPTA, Plaintiffs have been damaged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

a) compensatory damages in an amount to be determined at trial;

b) punitive damages;

c) pre- and post-judgment interest and any other interest available under any applicable rule or statute;

d) all costs of this action, including reasonable attorneys' fees and costs; and

e) such other and further relief as this Court shall deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: August 17, 2022	Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Attorneys for Plaintiffs*
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Tel.: 954-728-1280
Vincent.Alexander@lewisbrisbois.com

By: /s/ Vincent F. Alexander
	Vincent F. Alexander
	Fla. Bar No. 68114